**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO. //- 10137-JLT |
| ) | |
| v. ) | VIOLATIONS: |
| ) | |
| ROBERT H. ODIMEGWU, ) | 18 U.S.C. §1343 (Wire Fraud) |
| ) | 18 U.S.C. §1957 (Unlawful Monetary |
| Defendant. ) | Transactions) |
| ) | 18 U.S.C. §981, 18 U.S.C. §982, and |
| ) | 28 U.S.C. §2461 (Forfeiture) |

## SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At times material to this Superseding Indictment:

### THE DEFENDANT

1.     Defendant ROBERT H. ODIMEGWU ("ODIMEGWU") resided in Dedham,

Massachusetts.

2.     ODIMEGWU controlled and did business as Ikoyi Group, LLC, an entity that

purported to do business in the real estate industry.

3.     ODIMEGWU arranged to purchase various residential buildings in and around the

Boston area and, contemporaneously, arranged to convert these buildings into condominium

units to be sold to individual buyers.  Around the same time, ODIMEGWU recruited individuals

to purchase condominium units located in residential buildings he intended to, or had in fact,

purchased.

## THE CLOSING ATTORNEYS

4.      J. Daniel Lindley was an attorney licensed to practice law in the Commonwealth of Massachusetts. Lindley maintained a law office at 8 Winter Street, Boston, Massachusetts, and controlled bank account no. xxxxxx1774 at RBS Citizens Bank in Massachusetts.

5.      M.S.F. was an attorney licensed to practice law in the Commonwealth of Massachusetts. M.S.F. worked at the law firm of S&F, LLP, which maintained a law office in Hyde Park, Massachusetts, and controlled bank account no. xxxxxx2556 at RBS Citizens Bank in Massachusetts.

6.      G.V.D. was an attorney licensed to practice law in the Commonwealth of Massachusetts. G.V.D. worked for the law firm of V&T, LLP, which maintained a law office in Wellesley, Massachusetts, and controlled bank account no. xxxxxx0588 at Bank of America in Massachusetts. In conducting real estate closings, V&T, LLP routinely disbursed funds from account no. xxxxxx0588 after receiving facsimile confirmation that wire transfers of mortgage loan proceeds had been received in that account.

## THE STRAW BUYERS

7.      Individuals referred to herein as C.A., I.A., C.I., C.I.2, R.A., T.N., Augustus Okoye (using the name N.O.), V.M., F.C., and A.C. were recruited by ODIMEGWU and others acting in concert with him to serve as "straw buyers."

8.      As used in this Superseding Indictment, the term "straw buyer" refers to an individual in whose name real property was purchased and in whose name mortgage financing was fraudulently obtained. In most instances, straw buyers made no down payment or had down payments reimbursed, paid no cash at closings for property purchases or had cash paid at closings

2

reimbursed, had no intention to reside in the real property, and had no personal capacity to make the mortgage loan payments.

## THE MORTGAGE LENDERS

9.      Accredited Home Lenders, Inc. ("Accredited Home Lenders") was a real estate mortgage company with a principal place of business in San Diego, California.

10.      Arlington Capital Mortgage Corp. ("Arlington Capital") was a real estate mortgage company with an address in Bensalem, Pennsylvania.

11.      Long Beach Mortgage Corp. ("Long Beach"), a division of Washington Mutual Bank, N.A., was a real estate mortgage company with an address in Anaheim, California.

12.      New Century Mortgage Corp. ("New Century") was a real estate mortgage company with an address in Irvine, California.

13.      Taylor, Bean & Whitaker Mortgage Corp. ("TBW") was a real estate mortgage company with an address in Ocala, Florida.

14.      Accredited Home Lenders, Arlington Capital, Long Beach, New Century, and TBW are collectively referred to herein as "the mortgage lenders."

15.      As a matter of business routine, the mortgage lenders electronically transferred the proceeds of mortgage loans to real estate closing attorneys to be held in escrow pending closing of the real estate transactions to be funded.

## MANNER & MEANS

16.      Beginning not later than in or about January 2005, and continuing through in or about January 2007, ODIMEGWU – acting in concert with others known and unknown to the Grand Jury – defrauded and obtained money and property from various mortgage lenders by

means of material false and fraudulent pretenses, representations and promises, in connection with the financing of residential real estate transactions in Massachusetts.

      17.    ODIMEGWU executed his fraudulent transactions in the following manner:

          a.    In order to sell various units in residential buildings that he controlled, ODIMEGWU recruited and arranged for straw buyers to purchase condominium units in those buildings. In recruiting and arranging for straw buyers to make these property purchases, ODIMEGWU, at various times:

              i.    Promised to, and did, pay straw buyers kickbacks to participate in the property purchases;

              ii.    Arranged for straw buyers to obtain mortgage loans from mortgage lenders to finance the purchase of condominium units; and

              iii.    Promised straw buyers that they did not have to make a down payment or pay other funds in connection with the condominium purchases.

          b.    ODIMEGWU and others acting in concert with him caused mortgage loan applications and supporting documents to be prepared that contained various misrepresentations, including: (i) falsely inflated purchase prices for the properties; (ii) false representations regarding the identity of the borrower; (iii) false representations regarding straw buyers' monthly income; (iv) false representations regarding straw buyers' employment; (v) false representations that straw buyers owned substantial assets; and (vi)

4

false representations that straw buyers intended to occupy condominium units as a "primary" residence.

    c.    On various occasions, ODIMEGWU funded the down payment and the cash due from straw buyers at the closing. These payments were falsely represented on HUD-1 settlement statements for the respective property transactions as having been made by straw buyers. These HUD-1 settlement statements, along with mortgage loan applications containing false representations and other false and fraudulent loan closing documents, were submitted to mortgage lenders.

18.    Because the straw buyers lacked the means to pay their mortgages, their mortgage loans went into default and some loans subsequently went into foreclosure.

## FRAUDULENT TRANSACTIONS

### 42 BELKNAP STREET
### Dedham, Massachusetts

19.    On or about March 15, 2006, ODIMEGWU purchased the building at 42 Belknap Street, Dedham, Massachusetts, for $360,000.

20.    From on or about March 15, 2006, through on or about March 29, 2006, ODIMEGWU arranged to have the 42 Belknap Street property converted into condominium units so that the condominium units could be sold individually.

21.    From in or about October 2005, through in or about March 2006, ODIMEGWU recruited C.A. and I.A. to act as straw buyers for property purchases – including the purchases of Units 2 and 3, respectively, in the building located at 42 Belknap Street.

## *Unit 2*

22.     In or about March 2006, ODIMEGWU and others acting in concert with him caused mortgage loan applications and other documentation in the name of C.A. to be created and submitted to Accredited Home Lenders seeking a $232,200 loan for the purchase of 42 Belknap Street, Unit 2.

23.     The mortgage loan applications contained material false representations, including false statements regarding C.A.'s monthly income and false representations that C.A. intended to occupy the property as his primary residence.

24.     On or about March 31, 2006, in connection with the closing on the sale of 42 Belknap Street, Unit 2, a HUD-1 settlement statement was submitted to Accredited Home Lenders. The HUD-1 settlement statement represented that the purchase price for the unit was $258,000, that C.A. made a down payment of $12,900, and that C.A. paid $14,562.22 at the closing.

25.     On or about March 31, 2006, Accredited Home Lenders wired mortgage loan proceeds by interstate wire to the bank account of Lindley, the closing attorney.

26.     On or about April 4, 2006, Lindley wired the amount represented on the HUD-1 settlement statement as cash due to the seller into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU.

27.     On or about April 4, 2006, ODIMEGWU paid C.A. a $25,800 "deposit refund" by check.

28.     On or about April 6, 2006, ODIMEGWU paid C.A. $35,000 for participating in the fraudulent property transaction.

6

### *Unit 3*

29.    In or about March and April 2006, ODIMEGWU and others acting in concert with him caused a mortgage loan application and other documentation in the name of I.A. to be created and submitted to Arlington Capital seeking a $232,200 loan for the purchase of 42 Belknap Street, Unit 3.

30.    The mortgage loan application contained material false representations, including false statements regarding the purchase price of the property, I.A.'s assets, and that I.A. funded a $12,900 down payment towards the purchase of Unit 3.

31.    On or about April 14, 2006, in connection with the closing on the sale of 42 Belknap Street, Unit 3, a HUD-1 settlement statement was submitted to Arlington Capital. The HUD-1 settlement statement contained material false representations, including that the purchase price for the unit was $258,000, that I.A. funded a down payment of $12,900 towards the purchase of the unit, and that I.A. paid $17,177.53 at the closing. In fact, this purported down payment and cash due from borrower were funded by ODIMEGWU.

32.    On or about April 14, 2006, Arlington Capital wired mortgage loan proceeds by interstate wire to the bank account of Lindley, the closing attorney.

33.    On or about April 18, 2006, Lindley wired the amount represented on the HUD-1 settlement statement as cash due to the seller into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU – by means of two wire transfers.

34.    On or about April 18, 2006, ODIMEGWU paid I.A. $36,000 for participating in the fraudulent property transaction.

7

## 19 ARBOR LANE
## Dedham, Massachusetts

35.     On or about April 10, 2006, ODIMEGWU purchased 19 Arbor Lane, Dedham,
Massachusetts, for $450,000.

36.     From on or about April 10, 2006, through on or about June 5, 2006, ODIMEGWU
arranged to have the 19 Arbor Lane property converted into condominium units so that the
condominium units could be sold individually.

37.     From in or about October 2005, through in or about June 2006, ODIMEGWU
recruited C.A., C.I., and C.I.2 to act as straw buyers for property purchases – including the
purchases of Units 4 and 3, respectively, in the building located at 19 Arbor Lane.

### *Unit 4*

38.     In or about June 2006, ODIMEGWU and others acting in concert with him caused
mortgage loan applications and other documentation in the name of C.A. to be created and
submitted to Long Beach seeking a $187,200 loan for the purchase of 19 Arbor Lane, Unit 4.

39.     The mortgage loan applications contained material false representations, including
false statements regarding the purchase price of the property, C.A.'s employment, and C.A.'s
monthly income.

40.     On or about June 28, 2006, in connection with the closing on the sale of 19 Arbor
Lane, Unit 4, a HUD-1 settlement statement was submitted to Long Beach. The HUD-1
settlement statement represented that the purchase price for the unit was $208,000, that C.A.
made a down payment of $500, and that C.A. paid $21,501.56 at the closing.

41.     On or about June 28, 2006, Long Beach wired mortgage loan proceeds by
interstate wire to the bank account of Lindley, the closing attorney.

8

42.     On or about June 28, 2006, Lindley issued a check in the amount represented on

the HUD-1 settlement statement as cash due to the seller, which was subsequently deposited into

an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU.

43.     On or about June 30, 2006, ODIMEGWU paid C.A. a total of $28,750 for

participating in the fraudulent property transaction.

### *Unit 3*

44.     In or about July and August 2006, ODIMEGWU and others acting in concert with

him caused mortgage loan applications and other documentation in the name of C.I. and C.I.2 to

be created and submitted to New Century seeking a $199,500 loan for the purchase of 19 Arbor

Lane, Unit 3.

45.     The mortgage loan applications contained material false representations, including

false statements regarding the purchase price of the property, C.I.'s monthly income, that C.I. and

C.I.2 paid a $500 deposit, and that C.I. and C.I.2 would be paying $11,067.34 in additional funds

towards the purchase of Unit 3.

46.     On or about August 1, 2006, in connection with the closing on the sale of 19

Arbor Lane, Unit 3, a HUD-1 settlement statement was submitted to New Century. The HUD-1

settlement statement contained material false representations, including that the purchase price

for the unit was $210,000, that C.I. and C.I.2 funded a down payment of $500 towards the

purchase of the unit, and that C.I. and C.I.2 paid $10,318.28 at the closing. In fact, this purported

cash due from borrower was funded by ODIMEGWU.

47.     On or about August 1, 2006, New Century wired mortgage loan proceeds by

interstate wire to the bank account of S&F, LLP, the law firm of the closing attorney.

9

48.     On or about August 4, 2006, S&F, LLP wired the amount represented on the

HUD-1 settlement statement as cash due to the seller into an account of the Ikoyi Group LLC –

an account owned and controlled by ODIMEGWU.

49.     On or about August 4, 2006, ODIMEGWU paid C.I. $33,650 for participating in

the fraudulent property transaction.

### 640 RIVER STREET
### Mattapan, Massachusetts

50.     On or about September 12, 2006, ODIMEGWU purchased 640 River Street,

Dedham, Massachusetts, for $650,000.

51.     From on or about September 12, 2006, through on or about October 26, 2006,

ODIMEGWU arranged to have the 640 River Street property converted into condominium units

so that the condominium units could be sold individually.

52.     From in or about September 2006, through in or about November 2006,

ODIMEGWU and others acting in concert with him recruited R.A., T.N., Augustus Okoye (using

the name N.O.), V.M., F.C., and A.C. to act as straw buyers for one or more property purchases

involving Units 1A, 1B, 2A, 2B, 3A, and 3B in the building located at 640 River Street.

#### *Unit 1A*

53.     In or about September and October 2006, ODIMEGWU and others acting in

concert with him caused mortgage loan applications and other documentation in the name of

R.A. to be created and submitted to TBW seeking loans in the amounts of $180,000 and $45,000

for the purchase of 640 River Street, Unit 1A.

54.     The mortgage loan applications contained material false representations, including

false statements regarding the purchase price of the property and R.A.'s monthly income.

10

55.     On or about October 26, 2006, in connection with the closing on the sale of 640 River Street, Unit 1A, a HUD-1 settlement statement was submitted to TBW. The HUD-1 settlement statement contained material false representations, including that the purchase price for the unit was $225,000 and that R.A. paid $2,414.73 at the closing. In fact, this purported cash due from borrower was funded by ODIMEGWU.

56.     On or about October 26, 2006, TBW wired mortgage loan proceeds by interstate wire to the bank account of V&T, LLP, the law firm of the closing attorney.

57.     On or about October 30, 2006, V&T, LLP wired $80,159.80 into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU. This amount represented the cash due to the seller minus the cash due from the borrower and an amount added to a loan payoff referenced on the HUD-1 settlement statement.

58.     On or about October 30, 2006, ODIMEGWU paid R.A. $30,000 for participating in the fraudulent property transaction.

### *Unit 2B*

59.     In or about September and October 2006, ODIMEGWU and others acting in concert with him caused mortgage loan applications and other documentation in the name of V.M. & F.C. to be created and submitted to New Century seeking a $202,500 loan for the purchase of 640 River Street, Unit 2B.

60.     The mortgage loan applications contained material false representations, including false statements regarding the purchase price of the property, V.M. and F.C.'s monthly income, that V.M. owned a bank account with a balance of $32,800, that V.M. and F.C. intended to reside in the property as a primary residence, and that V.M. and F.C. would be paying $26,653.22 in additional funds towards the purchase of Unit 2B.

11

61.     On or about October 27, 2006, in connection with the closing on the sale of 640 River Street, Unit 2B, a HUD-1 settlement statement was submitted to New Century. The HUD-1 settlement statement contained material false representations, including that the purchase price for the unit was $225,000, that ODIMEGWU had financed a second mortgage for the property purchase by V.M. and F.C. in the amount of $22,500, and that V.M. and F.C. paid $4,508.87 at the closing. In fact, this purported cash due from borrower was funded by ODIMEGWU.

62.     On or about October 27, 2006, New Century wired mortgage loan proceeds to the bank account of V&T, LLP, the law firm of the closing attorney, and Bank of America notified V&T, LLP by facsimile of the receipt of the mortgage loan proceeds – a process that involved an interstate wire transmission.

63.     On or about October 31, 2006, V&T, LLP wired $83,870.76 into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU. This amount represented the cash due to the seller minus the cash due from the borrower.

64.     On or about November 3, 2006, ODIMEGWU paid V.M. and F.C. $20,000 for participating in the fraudulent property transaction.

### *Unit 3B*

65.     In or about October 2006, ODIMEGWU and others acting in concert with him caused mortgage loan applications and other documentation in the name of A.C. to be created and submitted to TBW seeking loans in the amounts of $180,000 and $45,000 for the purchase of 640 River Street, Unit 3B.

66.     The mortgage loan applications contained material false representations, including false statements regarding the purchase price of the property, A.C.'s monthly income, and that A.C. intended to reside in the property as a primary residence.

12

67.     On or about October 31, 2006, in connection with the closing on the sale of 640 River Street, Unit 3B, a HUD-1 settlement statement was submitted to TBW.  The HUD-1 settlement statement contained a material false representation that the purchase price for the unit was $225,000.

68.     On or about October 31, 2006, TBW wired mortgage loan proceeds to the bank account of V&T, LLP, the law firm of the closing attorney, and Bank of America notified V&T, LLP by facsimile of the receipt of the mortgage loan proceeds – a process that involved interstate wire transmissions.

69.     On or about November 2, 2006, V&T, LLP wired $112,223.53 into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU.  This amount represented the cash due to the seller plus a portion of a loan payoff amount listed on the HUD-1 settlement statement.

70.     On or about November 6, 2006, ODIMEGWU paid A.O. – A.C.'s husband – $30,000 in the form of two checks for A.C.'s participation in the fraudulent property transaction.

### *Unit 1B*

71.     In or about October and November 2006, ODIMEGWU and others acting in concert with him caused mortgage loan applications and other documentation in the name of T.N. to be created and submitted to TBW seeking loans in the amounts of $180,000 and $45,000 for the purchase of 640 River Street, Unit 1B.

72.     The mortgage loan applications contained material false representations, including false statements regarding the purchase price of the property, T.N.'s monthly income, that T.N. owned a retirement account with a balance of $85,000, and that T.N. intended to reside in the property as a primary residence.

13

73.     On or about November 1, 2006, in connection with the closing on the sale of 640 River Street, Unit 1B, a HUD-1 settlement statement was submitted to TBW.  The HUD-1 settlement statement contained a material false representation that the purchase price for the unit was $225,000.

74.     On or about November 1, 2006, TBW wired mortgage loan proceeds by interstate wire to the bank account of V.T., LLP, the law firm of the closing attorney.

75.     On or about November 2, 2006, V&T, LLP wired $85,713.77 into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU.  This amount represented the cash due to the seller plus a portion of the amount listed on the HUD-1 settlement statement as a loan payoff.

76.     On or about November 6, 2006, ODIMEGWU paid T.N. $30,000 in the form of a check for participating in the fraudulent property transaction.

### *Unit 2A*

77.     In or about November 2006, ODIMEGWU and others acting in concert with him caused mortgage loan applications and other documentation in the name of N.O. – an identity assumed by Augustus Okoye – to be created and submitted to TBW seeking loans in the amounts of $180,000 and $33,750 for the purchase of 640 River Street, Unit 2A.

78.     The mortgage loan applications and other documentation contained material false representations, including false statements regarding the purchase price of the property, the true identity of the buyer, N.O.'s employment, and N.O.'s monthly income.

79.     On or about November 21, 2006, TBW wired mortgage loan proceeds by interstate wire to the bank account of V.T., LLP, the law firm of the closing attorney.

14

80.    On or about November 22, 2006, in connection with the closing on the sale of 640 River Street, Unit 2A, a HUD-1 settlement statement was submitted to TBW. The HUD-1 settlement statement contained material false representations, including that the purchase price for the unit was $225,000, that N.O. was the buyer, and that N.O. paid $13,754.02 at the closing. In fact, this purported cash due from the borrower was funded by ODIMEGWU.

81.    On or about November 27, 2006, V&T, LLP wired seller's proceeds in the amount of $200,303.98 into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU. This amount represented the cash due to the seller minus the cash due from the borrower.

### Unit 3A

82.    In or about November 2006, ODIMEGWU and others acting in concert with him caused mortgage loan applications and other documentation in the name of N.O. – an identity assumed by Augustus Okoye – to be created and submitted to TBW seeking loans in the amounts of $180,000 and $45,000 for the purchase of 640 River Street, Unit 3A.

83.    The mortgage loan applications and other documentation contained material false representations, including false statements regarding purchase price of the property, the true identity of the buyer, N.O.'s employment, N.O.'s monthly income, and that N.O. intended to occupy the property as N.O.'s primary residence.

84.    On or about November 21, 2006, TBW wired mortgage loan proceeds by interstate wire to the bank account of V&T, LLP, the law firm of the closing attorney.

85.    On or about November 22, 2006, in connection with the closing on the sale of 640 River Street, Unit 3A, a HUD-1 settlement statement was submitted to TBW. The HUD-1 settlement statement contained material false representations, including that the purchase price

15

for the unit was $225,000, that N.O. was the buyer, and that N.O. paid $1,926.22 at the closing. In fact, this purported cash due from the borrower was funded by ODIMEGWU.

86.     On or about November 27, 2006, V&T, LLP wired seller's proceeds in the amount of $81,462.72 into an account of the Ikoyi Group LLC – an account owned and controlled by ODIMEGWU. This amount represented the cash due to the seller minus the cash due from the borrower.

87.     On or about November 28, 2006, ODIMEGWU paid Augustus Okoye $60,000 for participating in the fraudulent property transactions relating to 640 River Street, Units 2A and 3A.

## COUNT ONE
### (Wire Fraud – 18 U.S.C. §1343)

88.     The Grand Jury re-alleges and incorporates paragraphs 1 through 34 of this

Superseding Indictment, and further charges that:

89.     On or about the date set forth below, in the District of Massachusetts and

elsewhere,

### ROBERT H. ODIMEGWU,

the defendant herein, having devised and intending to devise a scheme and artifice to defraud,

and for obtaining money and property by means of material false and fraudulent pretenses,

representations, and promises, did cause writings, signs, signals, pictures and sounds to be

transmitted by means of wire communication in interstate commerce for the purpose of executing

such scheme and artifice, namely wire transfers of mortgage loan proceeds to the account of J.

Daniel Lindley, no. xxxxxx1774, at RBS Citizens Bank in Boston, Massachusetts, as follows:

| COUNT | DATE | PROPERTY | MORTGAGE LENDER | WIRE TRANSFER |
|:-----:|:----:|:---------|:----------------|:--------------|
| 1 | 4/14/2006 | 42 Belknap Street, Unit 3, Dedham, MA | Arlington Capital | $231,671.08 from an account at Deutsche Bank Trust Co. Americas in New York, NY. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

17

## COUNT TWO
### (Wire Fraud – 18 U.S.C. §1343)

90.　　The Grand Jury re-alleges and incorporates paragraphs 1 through 49 of this

Superseding Indictment, and further charges that:

91.　　On or about the date set forth below, in the District of Massachusetts and

elsewhere,

### ROBERT H. ODIMEGWU,

the defendant herein, having devised and intending to devise a scheme and artifice to defraud,

and for obtaining money and property by means of material false and fraudulent pretenses,

representations, and promises, did cause writings, signs, signals, pictures and sounds to be

transmitted by means of wire communication in interstate commerce for the purpose of executing

such scheme and artifice, namely a wire transfer of mortgage loan proceeds to the account of

S&F, LLP, no. xxxxxx2556, at RBS Citizens Bank in Boston, Massachusetts, as follows:

| COUNT | DATE | PROPERTY | MORTGAGE LENDER | WIRE TRANSFER |
|-------|------|----------|-----------------|---------------|
| 2 | 8/01/2006 | 19 Arbor Lane, Unit 3, Dedham, MA | New Century | $196,916.02 from an account at Deutsche Bank Trust Co. Americas in New York, NY. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS THREE THROUGH THIRTEEN
### (Wire Fraud – 18 U.S.C. §1343)

92.     The Grand Jury re-alleges and incorporates paragraphs 1 through 87 of this Superseding Indictment, and further charges that:

93.     On or about the dates set forth below, in the District of Massachusetts and elsewhere,

### ROBERT H. ODIMEGWU,

the defendant herein, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, did cause writings, signs, signals, pictures and sounds to be transmitted by means of wire communication in interstate commerce for the purpose of executing such scheme and artifice, namely wire transfers of, and facsimile confirmations relating to wire transfers of, mortgage loan proceeds to the account of V&T, LLP, no. xxxxxx0588, at Bank of America in Massachusetts, as follows:

| COUNT | DATE | PROPERTY | MORTGAGE LENDER | WIRE TRANSFER |
|---|---|---|---|---|
| 3 | 10/26/2006 | 640 River Street, Unit 1A, Mattapan, MA | TBW | $183,376.06 from an account at Colonial Bank, N.A., in Kissimmee, FL. |
| 4 | 10/26/2006 | 640 River Street, Unit 1A, Mattapan, MA | TBW | $44,937.27 from an account at Colonial Bank, N.A., in Kissimmee, FL. |
| 5 | 10/27/2006 | 640 River Street, Unit 2B, Mattapan, MA | New Century | $203,358.40 from an account at Deutsche Bank Trust Co. Americas in New York, NY. |

| 6 | 10/31/2006 | 640 River Street, Unit 3B, Mattapan, MA | TBW | $184,468.71 from an account at Citibank, N.A. in New York, NY. |
|---|---|---|---|---|
| 7 | 10/31/2006 | 640 River Street, Unit 3B, Mattapan, MA | TBW | $45,449.08 from an account at Colonial Bank, N.A. in Kissimmee, FL. |
| 8 | 11/01/2006 | 640 River Street, Unit 1B, Mattapan, MA | TBW | $181,421.50 from an account at Colonial Bank, N.A. in Kissimmee, FL. |
| 9 | 11/01/2006 | 640 River Street, Unit 1B, Mattapan, MA | TBW | $45,011.25 from an account at Colonial Bank, N.A. in Kissimmee, FL. |
| 10 | 11/21/2006 | 640 River Street, Unit 2A, Mattapan, MA | TBW | $183,102.22 from an account at Colonial Bank, N.A., in Kissimmee, FL. |
| 11 | 11/21/2006 | 640 River Street, Unit 2A, Mattapan, MA | TBW | $33,674.20 from an account at Colonial Bank, N.A., in Kissimmee, FL. |
| 12 | 11/21/2006 | 640 River Street, Unit 3A, Mattapan, MA | TBW | $183,675.97 from an account at Colonial Bank, N.A., in Kissimmee, FL. |
| 13 | 11/21/2006 | 640 River Street, Unit 3A, Mattapan, MA | TBW | $44,905.86 from an account at Colonial Bank, N.A., in Kissimmee, FL. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FOURTEEN THROUGH SEVENTEEN
### (Unlawful Monetary Transactions – 18 U.S.C. §1957)

94.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 87 of

this Superseding Indictment, and further charges that:

95.     On or about the following dates, in the District of Massachusetts, and elsewhere,

### ROBERT H. ODIMEGWU

the defendant herein, did knowingly engage and attempt to engage in a monetary transaction, by,

through and to a financial institution, in and affecting interstate and foreign commerce, in criminally

derived property of a value greater than $10,000, the particulars of which are described below, and

which was derived from specified unlawful activity, that is, Wire Fraud, in violation of 18 U.S.C.

§1343:

| COUNT | SPECIFIED UNLAWFUL ACTIVITY | MONETARY TRANSACTION | AMOUNT |
|---|---|---|---|
| 14 | Wire Fraud, to wit, $231,141.39 wire transfer on or about 3/31/2006, for the purchase of 42 Belknap Street, Unit 2, Dedham, MA, from an account at Deutsche Bank Trust Co. Americas in New York, NY to the account of J. Daniel Lindley, No. xxxxx1774, at RBS Citizens Bank in Boston, MA. | Wire transfer on or about 4/4/2006 from the account of J. Daniel Lindley, No. xxxxx1774, at RBS Citizens Bank to the account of the Ikoyi Group, LLC, No. xxxxxx4699, at Roslindale Co-operative Bank. | $226,587.52 |
| 15 | Wire Fraud, to wit, $186,147.36 wire transfer on or about 6/28/2006, for the purchase of 19 Arbor Lane, Unit 4, Dedham, MA, from an account at Washington Mutual Bank, F.A. in Stockton, CA to the account of J. Daniel Lindley, No. xxxxxx1774, at RBS Citizens Bank in Boston, MA. | Wire transfer on or about 7/11/2006 from the account of the Ikoyi Group, LLC, No. xxxxxx4699, at Roslindale Co-operative Bank, to an account of the Guangdong Yinhe Motorcycle Industry Co., Ltd., No. xxxx-xxxxxx8862, at the Rural Credit Cooperative Union of Shuni in China. | $47,630.00 |

| 16 | Wire Fraud Counts Three through Nine in connection with the purchases of Units 1A, 2B, 3B, and 1B in 640 River Street, Mattapan, MA. | Wire transfer on or about 11/06/2006 from the account of the Ikoyi Group, LLC, No. xxxxxx4699 at Roslindale Co-operative Bank, to an account of the Runyue International Trading Co. Ltd., No. xxxx-xxxxx4-002, at Wing Hang Bank Ltd. in China. | $50,000.00 |
|---|---|---|---|
| 17 | Wire Fraud Counts Ten through Thirteen in connection with the purchases of Units 2A and 3A in 640 River Street, Mattapan, MA. | Check No. 3694 drawn on the account of the Ikoyi Group, LLC, No. xxxxxx4699, at Roslindale Co-operative Bank, payable to V&T, LLP and negotiated at Bank of America on or about 12/06/2006. | $150,000.00 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. §981(a)(1)(C), 28 U.S.C. §2461(c), 18 U.S.C. §982(a)(1))

The Grand Jury further charges that:

96.     Upon conviction of one or more of the offenses alleged in Counts One through Thirteen of the Superseding Indictment, the defendant,

### ROBERT H. ODIMEGWU,

shall forfeit to the United States any property, real or personal, that constitutes, or is derived from, proceeds traceable to the commission of the offenses pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

97.     Upon conviction of one or more of the offenses alleged in Counts Fourteen through Seventeen of the Superseding Indictment, the defendant,

### ROBERT H. ODIMEGWU,

shall forfeit to the United States any property, real or personal, involved in the offense or traceable to the offense, pursuant to 18 U.S.C. §982(a)(1).

98.     If any of the property described in paragraphs 96 and 97 hereof as being forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and/or 18 U.S.C. § 982(a)(1) as a result of any act or omission of the defendant --

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred to, sold to, or deposited with a third party;

      c. has been placed beyond the jurisdiction of this Court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. §982(b)(1), incorporating 21 U.S.C. § 853(p), to seek forfeiture of all other property of the defendant up to the value of the property described in paragraphs 34 and 35.

All pursuant to Title 18, United States Code, Section 981; Title 28, United States Code, Section 2461(c); and Title 18, United States Code, Section 982.

A TRUE BILL

David R. Thompson
Foreperson of the Grand Jury

RYAN M. DISANTIS
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS                June 30 , 2011

Returned into the District Court by the Grand Jurors and filed.

Brendan
Deputy Clerk
6/30/11   1:30PM